UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEIKO KAWAMURA,<br><br>Plaintiff,<br><br>v.<br><br>MAMMOTH HOSPITAL, et al.,<br><br>Defendants. | Case No. 1:25-cv-00789-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ON PLAINTIFF'S EMTALA CLAIMS AGAINST DEFENDANT MAMMOTH AND ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED WITHOUT FURTHER LEAVE TO AMEND<br><br>(ECF No. 24)<br><br>ORDER DIRECTING CLERK OF COURT TO RENAME "MOTION TO AMEND" FILING<br><br>(ECF No. 24)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

Plaintiff Keiko Kawamura is proceeding *pro se* and *in forma pauperis* in this civil action filed against Defendants Mammoth Hospital, Northern Inyo Healthcare District, and their employees, with Plaintiff alleging Federal and state causes of actions stemming from the medical care provided—or lack thereof—during the birth of her minor daughter, K.N.B. (*See* ECF Nos. 5, 24).

The Court screened Plaintiff's first amended complaint on December 2, 2025, concluding

1

that Plaintiff sufficiently alleged that Defendant Mammoth Hospital violated the Emergency Medical Treatment and Active Labor Act (EMTALA) because Mammoth Hospital failed to screen her under 42 U.S.C. § 1395dd(a) and failed to stabilize her under § 1395dd(b). (ECF No. 17). However, Plaintiff's first amended complaint failed to state any other cognizable claims against any other Defendant.

Plaintiff then filed a second amended complaint on February 25, 2026,[1] (ECF No. 24) which is before the Court for screening.

Upon review, the Court once again concludes that the only cognizable claims in this case are that Defendant Mammoth Hospital failed to screen Plaintiff under 42 U.S.C. § 1395dd(a) and failed to stabilize her under § 1395dd(b) in violation of EMTALA. Accordingly, the Court recommends that all other claims and Defendants be dismissed without further leave to amend.

## I.     SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis*, the Court screens the complaint under 28 U.S.C. § 1915(e)(2)(B), which requires a court to dismiss a case that "is frivolous or malicious;" "fails to state a claim on which relief may be granted; or "seeks monetary relief against a defendant who is immune from such relief."

## II.     BACKGROUND[2]

### A.     Plaintiff's First Amended Complaint

Plaintiff filed her first amended complaint, on October 28, 2025. (ECF No. 14). The Court summarizes Plaintiff's first amended at length because the Court's screening order addressed it in depth, and Plaintiff's second amended complaint is almost identical to her first amended complaint.

Plaintiff's first amended complaint named the following Defendants: (1) Mammoth Hospital (aka Southern Mono Healthcare District); (2) Northern Inyo Healthcare District (NIHD), which operates as Northern Inyo Hospital; (3) Tom Parker (the CEO of Mammoth Hospital); (4)

---

[1] Plaintiff listed her second amended complaint as a "MOTION TO AMEND" in the title of her electronic filing. (ECF No. 24). The Court will direct the Clerk of Court to rename the filing "SECOND AMENDED COMPLAINT" on the docket. To the extent that Plaintiff asks for permission to file the second amended complaint, *see* ECF No. 24-1, p. 2, as the Court recently advised her in its February 25, 2026 order, "the Court already granted her [such] permission in its screening order," (ECF No. 23, p. 4, citing ECF No. 17).
[2] For readability, minor alterations, like altering capitalization, have been made to some of Plaintiff's quotations without indicating each change.

2

Dr. Kyle Patrick Howell (an emergency room physician employed by Mammoth Hospital); (5) Dr. Martha B. Kim (a physician specializing in obstetrics and gynecology employed by NIHD); (6) Dr. Anne E. Gasior (a pediatrician employed by NIHD); (7) Maya Malgorzata Eismont, R.N. (a registered nurse employed by NIHD)[3]; and (8) Patty Dickson (compliance officer at NIHD). (ECF No. 14, pp. 5-6). Plaintiff also sued DOES 1–10, stating that they "are individuals, entities, and/or organizations whose true names and capacities are currently unknown to Plaintiff[.]" (*Id.* at 6).

Plaintiff stated that this Court had subject matter jurisdiction due to federal questions presented under EMTALA and the Health Insurance Portability and Accountability Act of 1996 (HIPAA). (*Id.*). Further, she alleged that the Court has supplemental jurisdiction over her state law claims. (*Id.*).

As for facts, Plaintiff alleged that, on or about June 30, 2023, she was three minutes from Defendant Mammoth Hospital "while in advanced stages of active labor and experiencing a bona fide medical emergency." (*Id.* at 7). However, "[d]espite the immediacy and severity of Plaintiff's emergent obstetric condition, Defendant Mammoth Hospital knowingly and unlawfully refused to accept or render stabilizing treatment." (*Id.*). Plaintiff contended that, "[p]ursuant to instructions allegedly originating from Defendant Mammoth Hospital, Mono County Emergency Medical Services . . . personnel were directed to divert Plaintiffs to [NIHD], located more than forty-five (45) miles away, resulting in a substantial and unjustifiable delay in Plaintiff['s] access to medically necessary evaluation and care." (*Id.*).

Plaintiff alleged that she possesses EMS call recordings from which "it is evident that the ambulance was diverted at the direction of [Defendant Howell.]" (*Id.* at 8). EMS personnel asked Plaintiff "numerous non-medical questions concerning her insurance coverage and residency status while she was in active labor and medical distress," allegedly at the behest of Defendant Mammoth's employees, "indicating that financial and/or administrative considerations were prioritized over the Plaintiff's immediate medical needs in direct violation of EMTALA's anti-screening and non-discrimination provisions." (*Id.* at 7-8). "From the time EMS personnel arrived

---

[3] Plaintiff stated that Defendant Eismont "may have passed away on or about March 30, 2025." (ECF No. 14, p. 5). Because Plaintiff fails to state a cognizable claim against Defendant Eismont, the Court need not address this issue.

on scene and made contact with Plaintiff, until the time she was ultimately medically evaluated within NIHD, an unjustifiable delay of almost two (2) hours elapsed, during which Plaintiff remained in an active obstetric emergency without physician-supervised triage, assessment, or stabilization." (*Id.* at 8). Because of this delay, "Plaintiff sustained grave physiological injury, including but not limited to retained placenta, severe hemorrhage, near-fatal hypovolemia, postpartum cardiomyopathy, anemia-induced cardiomyopathy, sinus arrhythmia and severe obstetrics trauma." (*Id.*).

Plaintiff also challenged the medical care she received at NIHD and the conduct of its employees. Among other things, Plaintiff alleges that certain treatment was administered—such as a Hepatitis B vaccination—to her and her child "under the directives of Defendants NIHD, DR. KIM, DR. GASIOR, and carried out with the consent of their officers, directors, and/or managing agents without valid informed consent and in many cases, against Plaintiff's consent." (*Id.* at 14). She also contends that Dr. Kim mistreated her in multiple ways, including "yell[ing] obscenities at Plaintiff for requesting water from her partner and subsequently scream[ing] at Plaintiff to push out the placenta while lying on her back." (*Id.* at 11).

Further, Plaintiff raised issues regarding her medical records. For example, she asserted that "[m]edical records pertaining to [her] and her minor child were disseminated to third parties by NIHD without Plaintiff's knowledge or lawful authorization," and that "Defendant NIHD withheld and altered portions of Plaintiff's medical records." (*Id.* at 16).

Plaintiff listed the following causes of action: (1) EMTALA violations; (2) professional negligence/medical malpractice; (3) birth injury to minor; (4) failure to provide medical records; (5) violations under the Tom Bane Civil Rights Act; (6) battery; (7) intentional infliction of emotional distress; (8) violation of Federal and state privacy laws, including HIPAA violations; (9) libel; and (10) libel per se. (*Id.* at 19, 31, 37, 39, 44, 46, 48, 50, 54, 58).

As for relief Plaintiff, Plaintiff sought a variety of monetary damages, including no less than $75,000 for compensatory damages; declaratory relief under EMTALA; injunctive relief regarding EMTALA violations; a formal written apology; attorney fees; and pre-judgment and post-judgment interest. (*Id.* at 66-67).

4

**B.      Screening of Plaintiff's First Amended Complaint**

In its December 2, 2025 screening order, the Court concluded that Plaintiff's first amended complaint stated cognizable claims that Defendant Mammoth Hospital failed to screen her under 42 U.S.C. § 1395dd(a) and failed to stabilize her under § 1395dd(b). (ECF No. 17, p. 8).

However, it concluded that she could not sue the non-hospital Defendants, *i.e.*, Dr. Howell, Tom Parker, and Does 1–10, because EMTALA does not permit a private right of action against individuals. (*Id.* at 7, citing *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1256, 1259 (9th Cir. 1995)).

As to Plaintiff's other claims, the Court concluded that she failed to comply with Federal Rule of Civil Procedure Rule 8(a), which requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). (ECF No. 17, p. 8). The Court noted that Plaintiff's complaint contained (1) an extensive factual narrative, (2) unnecessary quotations from cases, (3) numerous statements not tied to her claims, and (4) multiple causes of action containing several legal claims. Generally, Plaintiff's complaint did "not make clear who she is suing for what claims based on what actions" and thus she did "not give sufficient notice to each Defendant as to what claims are asserted against it and why." (*Id.* at 9).

The screening order also advised Plaintiff of other reasons why she failed to state any claim, including that (1) HIPAA does not authorize a private right of action, and (2) Plaintiff failed to allege facts that any Defendant acted under color of law necessary to state a claim under 42 U.S.C. § 1983. (*Id.* at 10-12).

After explaining the deficiencies in the first amended complaint, the Court granted Plaintiff leave to file a second amended complaint, which she did on February 25, 2026. (ECF No. 24).

**C.      Plaintiff's Second Amended Complaint**

Plaintiff's second amended complaint is nearly identical to her first amended complaint. Plaintiff names the same Defendants as her first amended complaint and the majority of her

allegations are identical to her previous complaint.[4]

Although Plaintiff has added some additional statements, they do not relate to new factual allegations or new legal claims. For example, Plaintiff has added some allegations that relate to the timeliness of her claims. (ECF No. 24, p. 36) ("The statute of limitations applicable to professional negligence does not bar Plaintiff's claims. Defendants failed and refused to timely produce complete medical records for an extended period of approximately two years, thereby preventing Plaintiff from discovering and verifying the factual basis of potential malpractice or negligence claims."). She has also added a statement that Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a). (*Id.* at 5).

While Plaintiff's legal claims and requests for relief are mostly identical, the Court notes that, while her second cause of action was titled "professional negligence / medical malpractice" in her first amended complaint, it is now titled "professional negligence / medical malpractice / general negligence / negligence per se" in her second amended complaint. (*Compare* ECF No. 14, p. 31, *with* ECF No. 24, p. 31).

III.    ANALYSIS OF PLAINTIFF'S SECOND AMENDED COMPLAINT

A.    EMTALA

The Court first evaluates Plaintiff's claims against Defendants Mammoth Hospital, Dr. Howell, Tom Parker, and Does 1-10 based on an alleged violation of EMTALA. (ECF No. 24, p. 18).

EMTALA, also known as the "Patient Anti-Dumping Act" was enacted because of "concern[s] that hospitals were dumping patients who were unable to pay for care, either by refusing to provide emergency treatment to these patients, or by transferring the patients to other hospitals before the patients' conditions stabilized." *Jackson v. E. Bay Hosp.*, 246 F.3d 1248, 1254 (9th Cir. 2001). It permits a private right of action against a hospital.

> Any individual who suffers personal harm as a direct result of a *participating hospital's violation* of a requirement of this section may, *in a civil action against*

---

[4] Many of Plaintiff's allegations are identical, but the numbers of the paragraphs differ slightly. For example, ¶ 23 in the first amended complaint is identical to ¶ 27 in the second amended complaint; ¶ 58 in the first amended complaint is identical to ¶ 62 in the second amended complaint; ¶ 125 in the first amended complaint is identical to ¶ 129 in the second amended complaint. However, other identical allegations are more than four numbered paragraphs off, *e.g.*, ¶ 381 in the first amended complaint is identical to ¶ 394 in the second amended complaint.

*the participating hospital*, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

42 U.S.C. § 1395dd(d)(2)(A) (emphasis added).

Here, Plaintiff alleges that EMTALA was violated by Defendants' (1) failure to screen her and (2) failure to stabilize her condition.

Under EMTALA, the screening provision provides as follows:

In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists.

42 U.S.C. § 1395dd(a).

"To state a claim that Defendant failed to properly screen a patient under requirements of EMTALA, Plaintiff must allege that: (1) the patient had an emergency medical condition; and (2) the hospital did not screen the patient in the same way it screens other patients presenting with similar symptoms." *Smith v. Fresno Cmty. Hosp. & Med. Ctr.*, No. 1:20-CV-01616-ADA-BAM, 2023 WL 2392847, at *2 (E.D. Cal. Mar. 7, 2023) (citation and quotation marks omitted).

(1) The term "emergency medical condition" means--

(A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--

(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy,

(ii) serious impairment to bodily functions, or

(iii) serious dysfunction of any bodily organ or part; or

(B) with respect to a pregnant woman who is having contractions--

(i) that there is inadequate time to effect a safe transfer to another hospital before delivery, or

(ii) that transfer may pose a threat to the health or safety of the woman or the unborn child.

42 U.S.C. § 1395dd(e)(1).

Next, EMTALA's stabilization provision provides as follows:

If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either--

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c).

42 U.S.C. § 1395dd(b)(1)(A)-(B).

To succeed on a failure to stabilize claim, plaintiff ultimately must show, first, [the patient] had an emergency condition, and, second, the Hospital had actual knowledge of [the patient's] emergency condition. *See Eberhardt*, 62 F.3d at 1259 ("[T]he hospital's duty to stabilize the patient does not arise until the hospital first detects an emergency medical condition."). Third, plaintiff must also show the Hospital's failure to stabilize took place during emergency or observational care and not after [the patient] had been transitioned to inpatient care. *See Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1167 (9th Cir. 2002) ("We hold that the stabilization requirement normally ends when a patient is admitted for inpatient care."); *see also Bryan v. Rectors and Visitors of Univ. of Va.*, 95 F.3d 349, 352 (4th Cir. 1996) (EMTALA only covers stabilizing treatment "in connection with a possible transfer" and not "long-term care within the system"). And fourth, plaintiff must show the Hospital did not provide medical treatment necessary to assure a material deterioration was unlikely to result from a transfer. *See* 42 U.S.C. § 1395dd(e)(3)(A).

*Valadez v. Sutter Health Mem'l Hosp. Los Banos*, No. 1:22-CV-00263 KJM EPG, 2025 WL 1866019, at *8 (E.D. Cal. July 7, 2025).

With these standards in mind, the Court turns to Plaintiff's allegations in her second amended complaint. Regarding Defendant Mammoth Hospital, Plaintiff's second amended complaint has plausibly alleged that Mammoth Hospital is a "participating hospital" subject to EMTALA. Specifically, she alleges that Mammoth Hospital "maintains an Emergency Department." (ECF No. 24, p. 3); *see Jackson*, 246 F.3d at 1254 (noting that "EMTALA imposes a series of obligations on a hospital emergency department"). Moreover, Plaintiff's second amended complaint alleges that Plaintiff was approximately three minutes from Mammoth hospital while in labor. (ECF No. 24, p. 7). Communications between EMS services and Mammoth Hospital indicate that Mammoth Hospital knew that Plaintiff had an emergency medical condition, including "that Plaintiff was still in the third stage of labor, had not yet

delivered the placenta, was actively hemorrhaging, and that the umbilical cord remained attached to the newborn." (*Id.* at 8). Despite knowing this, Mammoth Hospital declined to screen Plaintiff for medical care or provide stabilizing treatment, and instead diverted the ambulance that Plaintiff was in to NIHD,[5] resulting in an almost 2-hour delay between when EMS personnel made contact with Plaintiff and the time NIHD evaluated her. (*Id.* at 7). Because of the delay in medical care, "Plaintiff sustained grave physiological injury, including but not limited to retained placenta, severe hemorrhage, near-fatal hypovolemia, postpartum cardiomyopathy, anemia-induced cardiomyopathy, sinus arrhythmia and severe obstetrics trauma." (*Id.* at 8). Moreover, Mammoth Hospital directed EMS services to ask "about Plaintiff's insurance coverage, residency status, and other non-medical information," indicating that "Defendant Mammoth Hospital's decision to divert the ambulance may have been motivated by financial considerations and a desire to avoid treating an out-of-area or uninsured patient." (*Id.* at 19).

Liberally construing the allegations in Plaintiff's second amended complaint, the Court concludes that she has sufficiently stated a claim against Defendant Mammoth Hospital for violation of 42 U.S.C. § § 1395dd(a) and (b) to proceed past screening.

However, as noted in the Court's previous screening order, because a private EMTALA right of action is authorized as to "a participating hospital's violation" under 42 U.S.C.A. § 1395dd(d)(2)(A), Plaintiff cannot sue non-hospital Defendants, *i.e.*, Dr. Howell, Tom Parker, and Does 1–10. *See Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1256, 1259 (9th Cir. 1995) (citing § 1395dd(d)(2) and noting that "[t]he plain text of the EMTALA explicitly limits a private right of action to the participating hospital" and that "EMTALA does not authorize a private right of action against physicians"); *Stephen[s] v. St. Francis Med. Ctr.*, No. CV 15-5568 R(JC), 2018 WL 3655659, at *12 (C.D. Cal. June 22, 2018), *report and recommendation adopted*, 2018 WL 3655407 (C.D. Cal. July 30, 2018) (noting that "EMTALA does not provide a private right of action against individual doctors"); (ECF No. 17, p. 7). Accordingly, Plaintiff's EMTALA claim

---

[5] The fact that Plaintiff did not physically arrive at the emergency room at Mammoth Hospital does not dispose of Plaintiff's claim, as the Ninth Circuit has held, "a hospital may divert an ambulance that has contacted its emergency room and is on its way to that hospital only if the hospital is in diversionary status." *Arrington v. Wong*, 237 F.3d 1066, 1072, 1074 (9th Cir. 2001) (discussing § 1395dd(a) and noting that diversionary status is when a hospital does not have the staff or facilities to accept additional emergency patients). Plaintiff alleges that, "[a]t no point has Defendant Mammoth Hospital demonstrated it was in diversionary status." (ECF No. 24, p. 28).

9

against these Defendants should be dismissed.

### B.      Lack of Short and Plain Statement

The remainder of Plaintiff's second amended complaint should be dismissed for failure to comply with Rule 8 of the Federal Rules of Civil Procedure.

Rule 8(a) requires any complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Despite the Court's instruction in the screening order, Plaintiff's second amended complaint fails to comply with this Rule because it does not include a short and plain statement of any claim, other than the EMTALA claims discussed above. Instead, Plaintiff's second amended complaint bears all the hallmarks of shotgun pleadings, which violate Rule 8 as explained by the Ninth Circuit as follows:

There are four main types of shotgun pleadings:

(1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to be a combination of the entire complaint; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (citation omitted) (concluding that shotgun pleadings violate Rule 8).

As did Plaintiff's first amended complaint, Plaintiff's second amended complaint includes an 11-page chronological narrative about the events underlying the birth of her child, including various factual allegations against all Defendants. (ECF No. 24, pp. 6–17). She then includes ten causes of action. (*Id.* at 18, 31, 37, 40, 45, 47, 49, 51, 55, 58). Many of these causes of action are asserted against "all Defendants," including the second cause of action for "professional

10

negligence / medical malpractice / general negligence / negligence per se," third cause of action for "birth injury to a minor," fifth cause of action for "violation of civil rights," and seventh cause of action for "intentional infliction of emotional distress." (*Id.* at 31, 37, 45, 49). These causes of action impermissibly purport to adopt the allegations of the entire complaint. For example, Plaintiff's tenth cause of action for libel *per se* as to some Defendants contains this statement in ¶ 369: "Plaintiff reallege and incorporates herein by reference all preceding paragraphs as though fully set forth herein." Thus, this count is impermissibly a combination of the above 368 paragraphs of the second amended complaint.

Plaintiff's second amended complaint also includes numerous statements that are not tied to her claims, including sections entitled "Unlawful Withholding, Tampering, and Spoliation of Evidence by Defendant Mammoth Hospital," "Tolling of Statutory Deadlines," and "Satisfaction of Conditions Precedent." (*Id.* at 62, 65, 68); (ECF No. 17, p. 9). These sections raise legal arguments that are not relevant to her statement of her claims. *See Yould v. Barnard*, No. 5:18-CV-01255-EJD, 2018 WL 4105094, at *4 (N.D. Cal. Aug. 29, 2018) (noting that complaint violated Rule 8(a) where "[i]t contain[ed] extensive sections of legal argument which make it nearly impossible for a defendant or the court to sort out alleged facts from opinion or commentary" and that "[t]hese statements [were] unnecessary to state a claim and serve only to confuse").

Plaintiff's second amended complaint also includes extensive quotations that appear to be copied from other cases, such as the following:

> In the instant case, appellees urge in their briefs that the phrase "comes to the emergency department" in § 1395dd(a) plainly and unambiguously means "arrives at a hospital." At oral argument, they again acknowledged that the provision at issue encompasses the entire hospital and its grounds, not just the "emergency department."

(ECF No. 24, p. 21). Such quotations to other cases are unnecessary and confusing. The Court cannot determine what Plaintiff is claiming happened to her and what Plaintiff is quoting from an unrelated case.

Plaintiff's second amended complaint also fails to separate each cause of action or claim into a different count. For example, her second cause of action is for "professional negligence," but also "medical malpractice," "general negligence," and "negligence per se." (*Id.* at 31). And

her eighth cause of action asserts claims for "violation of federal and state privacy laws unauthorized disclosure and mishandling of health records (45 C.F.R. §§ 164.502(a), 164.502(g); 45 C.F.R. § 164.306; Cal. Civ. Code §§ 56.10, 56.101, 56.36; 42 U.S.C. § 1983 as to Defendants Mammoth Hospital, Tom Parker, NIHD, Patty Dickson, R.N. Eismont and Does 1-10, Inclusive)." (ECF No. 24, at p. 51).

Additionally, the causes of action themselves include chronological accounts of events, rather than a clear description of what each Defendant did or failed to do that violated the law at issue. (ECF No. 17, p. 9).

For these reasons, the Court concludes that Plaintiff's second amended complaint fails to comply with Rule 8(a) and is subject to dismissal on that basis. *See McHenry v. Renne,* 84 F.3d 1172, 1177–80 (9th Cir. 1996) (upholding a Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 415 (9th Cir. 1985) (upholding a Rule 8(a) dismissal of a complaint that "exceeded 70 pages in length, [and was] confusing and conclusory"); *Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 674 (9th Cir. 1981) (holding that Rule 8(a) is violated when a complaint is excessively "verbose, confusing and almost entirely conclusory"); *Schmidt v. Herrmann,* 614 F.2d 1221, 1224 (9th Cir. 1980) (upholding a Rule 8(a) dismissal of "confusing, distracting, ambiguous, and unintelligible pleadings").

### C.   HIPAA

In addition, Plaintiff's claims under HIPAA are subject to dismissal because, as the Court previously advised Plaintiff in the screening order, HIPAA does not authorize a private right of action for HIPAA violations. *See*, *e.g.*, *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009) ("HIPAA does not provide any private right of action . . . ."); *Webb v. Smart Document Sols., LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007) ("HIPAA itself provides no private right of action."); *Huling v. City of Los Banos*, No. 1:11-CV-01797 LJO, 2012 WL 253251, at *7 (E.D. Cal. Jan. 25, 2012) ("It is beyond dispute, however, that HIPAA provides no private right of action to access the federal courts."); (ECF No. 17, p. 10).

Plaintiff's second amended complaint again includes claims under HIPAA, primarily in her fourth cause of action concerning certain Defendants' alleged failure to provide medical

records. (ECF No. 24, p. 40). Plaintiff alleges that "Defendant Mammoth Hospital withheld EMS call logs and diversion communications between its Emergency Room and Mono County EMS" and "Defendants NIHD and PATTY DICKSON failed to provide complete labor and neonatal records, including documents reflecting consent to medical procedures." (*Id.* at 41).

Accordingly, all claims in Plaintiff's second amended complaint based on HIPAA violations are subject to dismissal for the additional reason that there is no private right of action for violations of HIPAA.

### D.    Section 1983

Plaintiff's second amended complaint asserts constitutional claims under 42 U.S.C. § 1983. (*See*, *e.g.*, ECF No. 24, p. 2, 51, 61). For example, in her eighth cause of action, alleging violation of Federal and state privacy laws, Plaintiff alleges that certain Defendants' "actions . . . give rise to a civil rights claim under 42 U.S.C. § 1983, as the mishandling of medical identity and the refusal to properly correct the record deprived Plaintiff of protected parental rights and the right to control her child's healthcare information without due process." (*Id.* at 52).

The Civil Rights Act at issue provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived her of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").

As the Court explained in the screening order, such claims are subject to dismissal because Plaintiff has not alleged facts showing that the defendants were acting under color of state law. (ECF No. 17, p. 11). Although Plaintiff's second amended complaint summarily alleges that certain Defendants acted under color of law, *e.g.*, stating "Defendants NIHD and PATTY

13

DICKSON act[ed] under color of state law," (ECF No. 24, p. 51), it does not provide any facts in support of this conclusion. *See Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc.,* 507 F.2d 1103, 1105 (9th Cir. 1974) (hospital's "mere receipt of [public] funds, even coupled with alleged tax exemptions," was insufficient to establish state action); *Chrisman v. Sisters of Saint Joseph of Peace*, 506 F.2d 308, 314 (9th Cir. 1974) (hospital's receipt of public funds and "exemption from taxes and regulation by the state do not provide a basis for a 1983 suit.").

Accordingly, Plaintiff's section 1983 claims are subject to dismissal for the additional reason that Plaintiff's second amended complaint does not allege facts that show that any defendant acted under color of state law during the events at issue.

## IV.    CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's second amended complaint and concludes that it sufficiently states a claim that Defendant Mammoth Hospital violated EMTALA, specifically that it failed to screen her under 42 U.S.C. § 1395dd(a) and failed to stabilize her under § 1395dd(b). However, the Court recommends that all other claims and Defendants be dismissed without further leave to amend.

Notably, the initial screening order addressed materially identical allegations, advised Plaintiff how they were deficient, provided applicable legal standards, and granted her leave to amend. However, Plaintiff filed an almost identical second amended complaint with the same deficiencies. Granting further leave to amend would thus be futile. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (noting that a court does not err in denying leave to amend if it would be futile).

Accordingly, IT IS RECOMMENDED as follows:

1. This case proceed on Plaintiff Second Amended Complaint (ECF No. 24) for claims that Defendant Mammoth Hospital failed to screen her under 42 U.S.C. § 1395dd(a) and failed to stabilize her under § 1395dd(b).

2. All other claims and Defendants be dismissed without prejudice and without further leave to amend.

These findings and recommendations will be submitted to the United States District Judge

14

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits. Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court shall change the title of Plaintiff's "MOTION TO AMEND" at ECF No. 24 on the docket to "SECOND AMENDED COMPLAINT."

IT IS SO ORDERED.

Dated:   **March 13, 2026**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE